IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WENDY HUTTO, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. 2:22-cv-545-SMD |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|    Defendant. | ) |

**OPINION & ORDER**

Plaintiff Wendy Hutto ("Hutto") applied for a period of disability and disability insurance benefits ("DIB") and supplemental security income on May 26, 2020, alleging she became disabled on November 3, 2018. Tr. 20, 351. Hutto's application was denied at the initial administrative level. Tr. 182-89. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on May 12, 2022, that she was not disabled. Tr. 20-37. Hutto appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 6-11. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Hutto appeals under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS the Commissioner's

---

[1] On December 18, 2023, the United States Senate confirmed Martin O'Malley as Commissioner of the Social Security Administration. Thus, the Court substitutes O'Malley for his predecessor, Kilolo Kijakazi. *See* FED. R. CIV. P. 25(d)(1).

decision.[2]

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 11); Def.'s Consent (Doc. 10).

[3] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.\* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.  STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close

---

[4] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

3

scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.  ADMINISTRATIVE PROCEEDINGS

Hutto was 47 years old on her alleged disability onset date. Tr. 328. She graduated high school and has past relevant work experience as a department manager and nurse assistant. Tr. 35, 78-80, 342. Hutto alleged disability due to bone disc degenerative disease, severe narrowing of her neck, heart problems, asthma, sleep apnea, a tumor and hernia in her stomach, a leaking heart valve, stents in her heart, neuropathy, obsessive compulsive disorder ("OCD"), and severe anxiety. Tr. 341.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Hutto's disability determination. At step one, the ALJ found Hutto has not engaged in substantial gainful activity since her alleged onset date. Tr. 22. At step two, the ALJ found Hutto suffers from the following severe impairments: degenerative disc disease; hypertension; history of peripheral artery disease; obesity; asthma; umbilical hernia; obstructive sleep apnea ("OSA"); depression; anxiety;

OCD; and post-traumatic stress disorder. Tr. 23. At step three, the ALJ found Hutto does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23.

The ALJ proceeded to determine Hutto's RFC, finding she has the capacity to perform light work with some significant additional postural, mental, and environmental limitations. Tr. 26. At step four, the ALJ found Hutto unable to perform any past relevant work. Tr. 35. At step five, the ALJ considered Hutto's age, education, work experience, and RFC and found that jobs exist in significant numbers in the national economy that Hutto can perform. Tr. 35-36. Accordingly, the ALJ found Hutto was not disabled from November 3, 2018, through the decision date. Tr. 36.

## IV.    HUTTO'S ARGUMENTS

Hutto presents three issues for review:

(1) Whether the ALJ's RFC assessment is inconsistent with the findings of the prior administrative medical findings, rendering it unsupported by substantial evidence.

(2) Whether the ALJ improperly applied the Eleventh Circuit pain standard.

(3) Whether the Appeals Council erred by failing to consider the new and material evidence.

Pl.'s Br. (Doc. 18) p. 1. As explained below, the undersigned finds that the ALJ did not commit reversible error.

## V. ANALYSIS

### 1. The ALJ's RFC finding is supported by substantial evidence.

Hutto argues that the ALJ erred by failing to adopt in the RFC certain mental limitations imposed by the state agency psychological consultants. Pl.'s Br. (Doc. 18) pp. 6-9. Specifically, Hutto contends that, because the ALJ found the consultants' opinions "somewhat persuasive" as to everything except Hutto's interaction limitations, the ALJ "expressly accepted" the mental limitations imposed by the consultants, which restricted Hutto to 1-to-2 step tasks, a flexible schedule, and a well-spaced work setting. *Id*. at 7. Because the ALJ did not include these restrictions in the RFC and did not provide an explanation as to why he did not, Hutto argues that the ALJ failed to establish a "logical bridge" between the evidence and his RFC determination, rendering it unsupported by substantial evidence. *Id.*

The ALJ has the responsibility of assessing a claimant's RFC at the hearing level. 20 C.F.R. § 404.1546(c). In performing this task, the ALJ is required "to consider all of the medical and other evidence of record[.]" *Ramos v. Comm'r of Soc. Sec.*, 2021 WL 960688, at *6 (M.D. Fla. Mar. 15, 2021). Importantly, the ALJ is not required to use "magic words in a claimant's RFC assessment." *Carbone v. Comm'r of Soc. Sec.*, 2017 WL 1476283, at * 3 (M.D. Fla. Mar. 3, 2017). And "there is no requirement that the ALJ include every limitation [from a physician's opinion] verbatim" into an RFC determination. *Hilton v. Comm'r Soc. Sec.*, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); *see also Billups v. Colvin*, 2013 WL 6840383, at *8 (M.D. Ala. Dec. 27, 2013) (stating that there is no requirement that an ALJ adopt an expert opinion verbatim when determining a claimant's

RFC); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (noting that the ALJ is not required "to specifically address every aspect of an opinion or every piece of evidence in the record"). This is true even when an ALJ finds a physician's opinion persuasive. *Burrell v. Kijakazi*, 2022 WL 742841, at *3 (E.D. Penn. Mar. 10, 2022) ("[W]hen determining a claimant's RFC, an ALJ is not required to incorporate every finding or limitation made by a medical source simply because the ALJ finds the opinion persuasive."). Similarly, an ALJ is not bound by the prior administrative medical findings from state agency consultants. *Dulin v. Saul*, 2020 WL 1314488, at *6 (N.D. Fla. Jan. 2, 2020) (citations omitted), *R&R adopted by* 2020 WL 1310473, at *1 (N.D. Fla. Mar. 19, 2020).

Here, the ALJ was not required to adopt all limitations imposed by the state agency consultants in Hutto's RFC simply because he found their opinions somewhat persuasive. As explained above, it is the ALJ's responsibility—not a physician's or a state agency consultant's—to determine a claimant's RFC. And in making the RFC determination, the ALJ must consider the evidence as a whole and is not required to base the RFC on a medical opinion—even if he finds that opinion persuasive. Therefore, the Court finds that the ALJ did not err as a matter of law by failing to impose the mental limitations articulated by the state agency consultants even though he found their opinions somewhat persuasive. *See, e.g.*, *Nichols v. Kijakazi*, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of [the doctor's] limitations into the RFC.").

Nonetheless, while an ALJ is not required to adopt all of the limitations imposed in a persuasive medical opinion, he must support his RFC finding with substantial evidence.

7

In determining Hutto's RFC here, the ALJ found that she could "understand and remember simple instructions," could "sustain attention and concentration to complete simple tasks with customary workplace breaks," and could "tolerate only occasional changes in a routine work setting." Tr. 26. The ALJ based this finding on, *inter alia*, Hutto's "generally normal memory, concentration, and thought process findings," "the lack of significantly abnormal mental status exam findings," and her "ability to understand her medication regimen[.]" Tr. 32. This is substantial evidence supporting the ALJ's mental RFC finding and sufficiently explains how the ALJ reached the RFC determination. And while other evidence could be interpreted to justify additional RFC limitations, it is not the province of the Court to reweigh the evidence before the ALJ. Thus, because the Court finds that the ALJ's RFC determination is supported by substantial evidence, he did not err in rejecting the more restrictive limitations imposed by the state agency consultants.

      **2.   The ALJ properly applied the Eleventh Circuit pain standard.**

Hutto argues that the ALJ erred in finding that her subjective symptom testimony did not satisfy the pain standard. Pl.'s Br. (Doc. 18) pp. 9-13. Specifically, she contends that the ALJ created his own standard in evaluating her pain testimony, which led to an erroneous finding. *Id*.

A Social Security claimant may prove disability through subjective testimony regarding her symptoms. *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To evaluate whether a claimant has established disability through subjective symptom testimony, the ALJ must apply the following test: first, the ALJ must determine whether there is evidence of an underlying medical condition, and second, whether there

8

is objective medical evidence substantiating the severity of the symptoms from the medical condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 416.929.

If an ALJ determines that a claimant's medical condition could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine their affect on the claimant's capacity to work. *Klawinsky v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776-77 (11th Cir. 2010); 20 C.F.R. § 416.929(c)(1). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including objective medical evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(4). The ALJ may also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 416.929(c)(4).

If an ALJ rejects a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ's decision "does not need to cite 'particular phrases or formulations; but it cannot merely be a broad rejection [of the claimant's symptoms] which is 'not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). On appeal, then, "[t]he question is not . . . whether

9

the ALJ could have reasonably credited [the claimant's symptom] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938-39 (11th Cir. 2011) (finding that substantial evidence supported the ALJ's decision to discredit claimant's subjective testimony because claimant's testimony regarding his daily activities was inconsistent with the records from his treating and examining physicians, showing claimant was capable of doing light work); *Dyer*, 395 F.3d at 1212 (reversing district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's subjective testimony). If the ALJ's "clearly articulated credibility finding" is supported by substantial evidence in the record, the ALJ's finding will not be disturbed. *Foote*, 67 F.3d at 1562.

To begin, the Court finds that the ALJ applied the appropriate legal standard when evaluating Hutto's symptom testimony. The ALJ explicitly stated that he "considered all [of Hutto's] symptoms and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 404.1529 and [§] 416.929 and SSR 16-3p." Tr. 26. The ALJ then concluded that Hutto's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms; however, [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 28. This language correctly applies the Eleventh Circuit's standard for evaluating subjective complaints of pain and other symptoms and is sufficient to show that the ALJ applied the proper standard to Hutto's symptom testimony. *See, e.g.*, *Thompson v. Comm'r of Soc.*

10

*Sec.*, 2023 WL 2352844, at *4 (M.D. Fla. Feb. 1, 2023); *Owens v. Comm'r of Soc. Sec.*, 2012 WL 651368, at *4 (M.D. Fla. Feb. 19, 2021) (although the ALJ relied on "boilerplate language in assessing Plaintiff's subjective [ ] complaints" such language "directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence") (emphasis in original).

Moreover, the ALJ articulated explicit and adequate reasons for rejecting Hutto's symptom testimony that exceeded a conclusory application of the appropriate standard. *See* Tr. 28-30. For example, the ALJ acknowledged Hutto's obesity and other physical conditions that were reflected by "some abnormal imaging and physical exam findings." Tr. 30. These abnormal results included, *inter alia*, "degenerative disc disease at C4-C5 with mild canal stenosis and severe bilateral foraminal narrowing and status post C6-C7 ACDF" (May 2021 cervical spine MRI results); "ACDF at C6-C7 and a disk bulge herniation and some osteophyte formation at C4-C5 that is causing some mild central stenosis as well as mild-to-moderate right foraminal stenosis" (February 2021 cervical spine MRI results); and "mild degenerative disc and facet disease" (February 2021 lumbar spine MRI results). Tr. 28.

However, in concluding that the intensity, persistence, and limiting effects of Hutto's symptoms were not severe enough to preclude employment, the ALJ pointed to evidence showing Hutto's "generally intact musculoskeletal and neurological functioning"; normal range of motion, gait, strength, and sensation findings; and a "lack of significant musculoskeletal treatment during the relevant period," which included

11

recommendations for physical therapy and epidurals but not surgery.[6] Tr. 28-29. The ALJ also noted medical evidence showing that Hutto lacked muscle atrophy, which he interpreted as "a common side effect of prolonged and/or chronic lack of muscle use in order to avoid pain." Tr. 28-29. Further, the ALJ found that Hutto "was generally assessed to be in no distress throughout the relevant period." Tr. 29. Thus, based on this and other evidence, the ALJ concluded that the record "was inconsistent with [Hutto's] physical allegations" of debilitating pain as the record showed "a lack of significantly abnormal exam findings on a consistent or extended basis, lack of notations of distress or fatigue, and the conservative treatment for some conditions or improvement of symptoms with treatment[.]" Tr. 30. This is substantial evidence supporting the ALJ's decision to reject Hutto's symptom testimony. *See Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 657 (11th Cir. 2020) ("[T]he ALJ's determination that [claimant's] subjective testimony regarding her symptoms was not credible was supported by substantial evidence, including the objective medical evidence and the evidence regarding [claimant's] daily activities and treatment history.").

Of course, Hutto disagrees with the ALJ's interpretation of the evidence and invites the Court to reach a different conclusion. She points to *Hill v. Barnhart*, 440 F. Supp. 2d

---

[6] Hutto notes that the evidence considered by the ALJ was after she underwent an anterior cervical discectomy and fusion ("ACDF"), which is "surgery to remove a herniated or degenerative disc in the neck," which requires 4-6 weeks recovery. Pl.'s Br. (Doc. 18) p. 12. Hutto argues that because she had ACDF, the ALJ's reliance on the absence of surgical recommendation is inconsistent with the evidence. However, as Hutto notes, the evidence considered by the ALJ shows that post surgery, Hutto received conservative treatment. And even if the ALJ improperly relied on the absence of a surgical recommendation after Hutto's ACDF surgery, other substantial evidence supports the ALJ's conclusion that her symptoms were not sufficiently severe to render her disabled.

1269 (N.D. Ala. 2006), wherein the court found that the ALJ erred in concluding that the claimant—who had multiple herniated discs and severe degenerative disc disease—did not satisfy the pain standard. In making this determination, the *Hill* court pointed to the "overwhelming medical evidence" supporting the claimant's pain testimony, including physicians who opined that the claimant "had chronic, continuous severe pain as a result of his condition." *Hill*, 440 F. Supp. 2d at 1275. The *Hill* court also noted that even though there was no medical evidence in the record contradicting the physicians' opinions, the ALJ rejected those opinions, nonetheless. *Id*. at 1279. Therefore, based on the claimant's symptom testimony (which the court found was not properly discounted) and the uncontradicted opinions of the physicians, the *Hill* court concluded that the ALJ's RFC finding was not based on substantial evidence. *Id*.

But unlike *Hill*, which is not binding on this Court, the ALJ here pointed to evidence undermining Hutto's claims of debilitating back pain. *See, e.g.*, Tr. 27 ("To help the pain, she takes pain medication and muscle relaxers" and uses a TENS unit); Tr. 29 (noting that Hutto "did physical therapy for about a month"); Tr. 32 (noting that the DDS physical consultant at the initial level found that Hutto could do light work with some restrictions and the DDS physical consultant at the reconsideration level found that Hutto could do medium work with some limitations). Hutto's back conditions alone do not satisfy the pain standard, and while the ALJ found that Hutto's conditions could reasonably be expected to cause her symptoms, the ALJ set forth substantial evidence supporting his finding that the intensity and persistence of those symptoms did not preclude her from all work. Therefore,

the Court finds that the ALJ was not clearly wrong to discredit Hutto's testimony and his credibility finding will not be disturbed.

### 3. The Appeals Council did not err by not considering Hutto's additional evidence.

Hutto argues that the Appeals Council erred by declining to consider additional evidence she submitted after the ALJ's decision. Pl.'s Br. (Doc. 18) pp. 13-15. Hutto's additional evidence consists of treatment records from East Alabama Mental Health dated April 22, 2022, through June 6, 2022. Tr. 47-55.

With a few exceptions, a claimant is allowed to present additional evidence related to her disability at each stage of the Social Security administrative process. *See* 20 C.F.R. § 404.900(b). If a claimant presents additional evidence to the Appeals Council after an ALJ has rendered an unfavorable decision regarding disability, the Appeals Council must consider the additional evidence if it "is new, material, and relates to the period on or before the date of the hearing decision." 20 C.F.R. § 404.970(a)(5); *Hunter v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 936, 939 (11th Cir. 2017). Evidence is new when it is noncumulative of the evidence before the ALJ. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015). Evidence is material if there is a reasonable probability that it would change the administrative results. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). And evidence is chronologically relevant when "it relates to the period on or before the date of the [ALJ's] hearing decision." *McCullars v. Comm'r Soc. Sec. Admin.*, 825 F. App'x 685, 692 (11th Cir. 2020) (per curiam) (quoting 20 C.F.R. § 416.1470).

"[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington v. Soc. Sec. Admin, Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). The Appeals Council's decision is subject to judicial review under sentence four of section 405(g). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1265 (11th Cir. 2007). Pursuant to a sentence four remand, a reviewing court must determine if the new, material, and chronologically relevant evidence submitted "renders the denial of benefits erroneous." *Id.* at 1262. For a court to find the denial of benefits erroneous, the plaintiff must show that "in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence[.]" *Timmons v. Comm'r of Soc. Sec.*, 552 F. App'x 897, 902 (11th Cir. 2013) (citing *Ingram*, 496 F.3d at 1266-67). On the other hand, if the "additional evidence [is] either cumulative of the evidence before the ALJ or [is] not chronologically relevant, and none of it undermine[s] the substantial evidence supporting the ALJ's decision," the Commissioner's decision is due to be affirmed. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014).

Here, the Appeals Council found that the East Alabama treatment records did not show a reasonable probability that they would change the outcome of the ALJ's decision. Tr. 7. The East Alabama treatment records state that Hutto had a hearing with the ALJ; indicated "that she has not felt medication is calming her and will talk with MD at next appointment"; "[d]iscussed codependent relationship her wife has with her parents and impact this has on their lives"; "[p]roblem solved boundaries, setting limits, and maintaining calm in her relationship"; and "[p]rocessed thoughts and reactions to change."

15

Tr. 50 (April 22, 2022). The records also indicate that Hutto is a "poor historian and poor organizer, [and she] depends on her wife to help her keep up with [appointments], [medications], etc[.]" Tr. 48 (June 6, 2022).

Simply put, this new evidence does not render the ALJ's denial of benefits erroneous. The treatment records do not undermine the substantial evidence upon which the ALJ relied to find that Hutto was not disabled, nor do they show that Hutto has greater limitations in her mental functioning than the ALJ originally determined. In large part, the treatment records detail many of the same concerns already expressed in other medical records considered by the ALJ in reaching his decision.[7] As such, the Court finds that the East Alabama treatment records do not render the denial of benefits erroneous, and that the Appeals Council did not err by not considering them.

## VI.   CONCLUSION

As explained above, the undersigned finds that the ALJ did not commit reversible error and that substantial evidence supports the Commissioner's decision. Accordingly, it is ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

---

[7] For instance, the records already considered by the ALJ chronicle Hutto's "long history of mood instability," Tr. 854, concerns about medications, Tr. 861, efforts to establish "positive interpersonal relationships," Tr. 868, coping strategies to manage symptoms of excessive worry, anxiety, and depression, Tr. 885, relationship stress with her girlfriend and "unhealthy relationship issues" generally, Tr. 898, 970, and "poor focus and concentration," Tr. 941.

DONE this 27th day of February, 2024.

                                                    Stephen M. Doyle
                                                  CHIEF U.S. MAGISTRATE JUDGE